**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| REPLY S.P.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1524-MN |
| | ) | |
| SENSORIA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
**DEFENDANT'S COUNTERCLAIMS PURSUANT TO RULE 12(B)(6)**

Dated:  November 17, 2020

OF COUNSEL:

Maria Z. Vathis (admitted *pro hac vice*)
BRYAN CAVE LEIGHTON
  PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, IL  60601
(312) 602-5000
maria.vathis@bclplaw.com

**CHIPMAN BROWN CICERO & COLE, LLP**
Paul D. Brown (No. 3903)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware  19801
302-295-0191
brown@chipmanbrown.com

*Attorneys for Plaintiff Reply S.P.A.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

NATURE AND STAGE OF THE PROCEEDINGS .......................................................... 1

SUMMARY OF ARGUMENT .......................................................................................... 2

FACTUAL BACKGROUND ............................................................................................. 3

ARGUMENT ..................................................................................................................... 4

     I.     LEGAL STANDARD ....................................................................................... 4

     II.    SENSORIA'S CLAIMS FOR TORTIOUS INTERFERENCE WITH
          PROSPECTIVE BUSINESS OPPORTUNITY AND BREACH OF
          IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ARE
          BARRED BY THE THREE-YEAR STATUTE OF LIMITATIONS. .................. 5

     III.   SENSORIA FAILS TO STATE A COUNTERCLAIM FOR TORTIOUS
          INTERFERENCE WITH PROSPECTIVE BUSINESS OPPORTUNITY. ........... 7

          A.     Sensoria Fails To Sufficiently Allege That Reply Intentionally
                 Interfered With Sensoria's Business Opportunities. .................................. 8

          B.     Sensoria Also Fails To Sufficiently Claim That Reply's Alleged
                 Interference Proximately Caused Sensoria's Alleged Damages. .............. 12

     IV.   SENSORIA FAILS TO STATE A COUNTERCLAIM FOR BREACH OF
          IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING. ................. 13

CONCLUSION ................................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Agilent Techs., Inc. v. Kirkland*,
   2009 WL 119865 (Del. Ch. Jan. 20, 2009)................................................................8, 9, 10, 11

*Airborne Health, Inc. v. Squid Soap, LP*,
   984 A.2d 126 (Del. Ch. 2009) ............................................................................................. 14

*Allen v. El Paso Pipeline GP Co.*,
   113 A.3d 167 (Del. Ch. 2014) ....................................................................... 13, 14, 15, 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................. 4

*Aspen Advisors LLC v. United Artists Theatre Co.*,
   843 A.2d 697 (Del. Ch. 2004), *aff'd*, 861 A.2d 1251 (Del. 2004) ....................................... 15

*Beard Research, Inc. v. Kates*,
   8 A.3d 573 (Del. Ch. 2010) ...........................................................................................8, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 4

*Coit Capital SEC., LLC v. Turbine Asset Holdings, LLC*,
   2019 WL 3949800 (Del. Super. Ct. Aug. 21, 2019)............................................................. 7

*Dunlap v. State Farm Fire & Cas. Co.*,
   878 A.2d 434 (Del. 2005).................................................................................................... 13

*Fitzgerald v. Cantor*,
   1998 WL 842316 (Del. Ch. Nov. 10, 1998) ........................................................................ 13

*ISN Software Corp. v. Richards, Layton & Finger, P.A.*,
   226 A.3d 727 (Del. 2020)..................................................................................................5, 6

*Johnson v. City of Shelby, Miss.*,
   574 U.S. 10 (2014) ............................................................................................................... 4

*Konstantino v. AngioScore, Inc.*,
   2015 WL 5770582 (Del. Ch. Oct. 29, 2015) ........................................................................ 8

*Kuroda v. SPJS Holdings, LLC*,
   971 A.2d 872 (Del. Ch. 2009) ............................................................................................ 13

*Miller v. HCP & Co.*,
   2018 WL 656378 (Del. Ch. Feb. 1, 2018), *aff'd sub nom. Miller v. HCP*
   *Trumpet Investments, LLC*, 194 A.3d 908 (Del. 2018), *reargument denied*
   (Oct. 9, 2018) .................................................................................................. 14

*Morse v. Lower Merion Sch. Dist.*,
   132 F.3d 902 (3d Cir. 1997) ............................................................................ 4

*Nami v. Fauver*,
   82 F.3d 63 (3d Cir. 1996) ................................................................................ 4

*Nemec v. Shrader*,
   991 A.2d 1120 (Del. 2010) ...................................................................... 13, 15

*Oxbow Carbon & Minerals Holding v. Crestview-Oxbow Acquisition, LLC*,
   202 A.3d 482 (Del. 2019) .............................................................................. 13

*PNC Bank, Del. v. Turner*,
   659 A.2d 222 (Del. Super. Ct. 1995) ............................................................. 6

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,
   113 F.3d 405 (3d Cir. 1997) ............................................................................ 4

*Shea v. Delcollo and Werb, P.A.*,
   2009 WL 2476603 (Del. Aug. 13, 2009) ........................................................ 6

*SmithKline Beecham Pharm. Co. v. Merck & Co.*,
   766 A.2d 442 (Del. 2000) ................................................................................ 5

*TL of Fla., Inc. v. Terex Corp.*,
   54 F. Supp. 3d 320 (D. Del. 2014) ................................................................. 5

*Triton Const. Co. v. E. Shore Elec. Servs., Inc.*,
   2009 WL 1387115 (Del. Ch. May 18, 2009), *aff'd*, 988 A.2d 938 (Del. 2010)...................... 9

*U.S. Bank Nat. Ass'n v. Gunn*,
   23 F. Supp. 3d 426 (D. Del. 2014) .................................................. 7, 8, 10, 11

*Victaulic Co. v. Tieman*,
   499 F.3d 227 (3d Cir. 2007) ............................................................................ 4

*Wayman Fire Prot., Inc. v. Premium Fire & Sec., LLC*,
   2014 WL 897223 (Del. Ch. Mar. 5, 2014) ................................................... 12

*Wilkerson v. New Media Tech. Charter Sch. Inc.*,
   522 F.3d 315 (3d Cir. 2008) ............................................................................ 5

*Wilson v. Kirlin*,
   2011 WL 1465576 (Del. Super. Ct. Apr. 15, 2011) ................................................................ 6

**Statutes**

10 *Del. C.* § 8106 ......................................................................................................................... 5

**Rules**

FRCP 12(b) ..................................................................................................................................... 1

Rule 12(b)(6) ...................................................................................................................... *passim*

## INTRODUCTION

In its Counterclaims, Defendant Sensoria, Inc. ("Sensoria") alleges that Plaintiff Reply, S.p.A. ("Reply") interfered with Sensoria's prospective business opportunities and breached the covenant of good faith and fair dealing.  These claims amount to a transparent attempt by Sensoria to improperly shift the blame to Reply for Sensoria's own business failures.  In any event, the claims are deficient and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  As a threshold matter, Sensoria's Counterclaims are time-barred. Even if the Counterclaims were not time-barred (which they are), Sensoria's claims are based on conclusory, vague and unsupported allegations that are insufficient to sustain the claims.  As a result, Sensoria's Counterclaims should be dismissed with prejudice.

## NATURE AND STAGE OF THE PROCEEDINGS

Reply filed its Verified Complaint (Dkt. No. 1, "Complaint") in United States District Court for the Western District of Washington on March 27, 2019, for breach of contract; unjust enrichment, plead in the alternative; fraudulent transfer, breach of fiduciary duty, breach of gross mismanagement and corporate waste.

On April 18, 2019, Defendants Sensoria, Inc., Sensoria Holdings, Ltd., Dr. David Viganò and Maurizio Macagno filed their Motion to Dismiss under FRCP 12(b) or for Change of Venue (Dkt. No. 22), seeking to dismiss the Complaint for want of subject matter jurisdiction, improper venue and forum non conveniens, or in the alternative seeking to transfer the venue of this matter. Defendants' Motion to Dismiss or for Change of Venue was fully briefed.  On July 30, 2019 the Court entered an Order (Dkt. No. 34) granting the motion in part and denying the motion in part. The Court denied Defendants' motion to dismiss for lack of subject matter jurisdiction and improper venue and transferred the counts for breach of contract and, plead in the alternative, unjust enrichment, to the District of Delaware, with the remaining counts stayed pending resolution

of the transferred counts or further motions.  The matter was accordingly transferred from the Western District of Washington to the District of Delaware on August 15, 2019 (Dkt. No. 35).

Following this transfer, on October 4, 2019, Defendants moved to dismiss certain breach of contract and unjust enrichment counts, sought to have Sensoria Holdings, Ltd., Dr. David Viganò and Maurizio Macagno dismissed from the cause of action because the transferred counts were not directed to those defendants (Dkt. Nos. 45 and 46).  Defendants' second motion to dismiss was fully briefed. On September 22, 2020, the Court granted Defendants' second motion to dismiss and thereby dismissed Defendants Sensoria Holdings, Ltd., Dr. David Viganò and Maurizio Macagno and dismissed Reply's count for unjust enrichment.

On October 13, 2020, Sensoria answered the Complaint, asserted certain affirmative defenses and alleged counterclaims for tortious interference with prospective business opportunity (Counterclaim I) and breach of the implied covenant of good faith and fair dealing (Counterclaim II). (Dkt. No. 70).

Reply now moves to dismiss Sensoria's Counterclaims for tortious interference with prospective business opportunity and breach of the implied covenant of good faith and fair dealing pursuant Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## <u>SUMMARY OF ARGUMENT</u>

Sensoria's Counterclaims are deficient and must be dismissed with prejudice for the following reasons:

- First, Sensoria's Counterclaims are time-barred under Delaware's three-year statute of limitations for tortious interference with prospective business opportunity and breach of implied covenant of good faith and fair dealing, which is fatal to its Counterclaims. The Counterclaims should be dismissed with prejudice on this basis alone.

- Second, even if the Counterclaims were not time-barred – which they are, Sensoria fails to adequately plead Counterclaim I for tortious interference. In particular, Counterclaim I is devoid of any allegation that Reply intentionally injured Sensoria or that Reply's alleged actions were the proximate cause of Sensoria's alleged injuries. Both of these requisite elements must be adequately pled in order to sustain a claim, and Sensoria has not (and cannot) do so.

- Third, Counterclaim II is not viable, because it is based solely on vague, unsupported and conclusory allegations.

Because Sensoria's Counterclaims are time-barred, they should be dismissed with prejudice. Even if the Counterclaims were not time-barred, because Sensoria fails to sufficiently state claims for which relief can be granted as to either of its Counterclaims, Sensoria's Counterclaims must be dismissed with prejudice.

## FACTUAL BACKGROUND

In July 2014, Reply purchased 6,843,100 Series A Shares of Sensoria pursuant to its Series A Preferred Stock Purchase Agreement (the "PSPA"). (Answer to Verified Complaint and Counterclaims ("Counterclaims") ¶11). By doing so, Reply became the majority Series A stockholder of Sensoria. (Counterclaims ¶13). In accordance with the PSPA, including its attachments and exhibits, Sensoria's stockholders "shall be entitled to vote on the election of the members of the Board" and that if any "director serving on the board is designated as the 'Preferred Director'…then such director shall be deemed to be the 'Series Designee' for purposes hereof." (Counterclaims ¶14). Under the PSPA, Reply, as the majority Series A stockholder of Sensoria, voted on the Series A Designee to Sensoria's Board, who "is required to approve the "incurrence [of] any indebtedness in excess of $500,000.00 that is not already included in a Board-approved

budget …, other than trade credit incurred in the ordinary courts of business." (Counterclaims ¶16).

Beginning in 2016, Sensoria started negotiating with potential investors. (Counterclaims ¶22). Representatives from both Sensoria and Reply participated in investment negotiations with HighCape Capital ("HighCape"), Mediaset S.p.A. ("Mediaset"), and Equiter S.p.A. ("Equiter") between May 2016 and sometime in 2018; negotiations did not result in the investors entering into an agreement with Sensoria or Reply. (*See* Counterclaims ¶¶21–36, 47).

## ARGUMENT

### I.   LEGAL STANDARD

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman,* 499 F.3d 227, 234 (3d Cir. 2007) (*quoting Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim.

*Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 321 (3d Cir. 2008) (internal citations and quotation marks omitted).

## II.   SENSORIA'S CLAIMS FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS OPPORTUNITY AND BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ARE BARRED BY THE THREE-YEAR STATUTE OF LIMITATIONS.

Sensoria's Counterclaims are time-barred and should be dismissed with prejudice. In Delaware, it is well-established that both tortious interference with business opportunity and breach of implied covenant claims are subject to a three-year statute of limitations.  10 *Del. C.* § 8106; *see SmithKline Beecham Pharm. Co. v. Merck & Co.*, 766 A.2d 442, 450 (Del. 2000); *TL of Fla., Inc. v. Terex Corp.*, 54 F. Supp. 3d 320, 326 (D. Del. 2014).  It is also well-established that the statutory limitations period begins to run when a claim accrues.  *SmithKline Beecham Pharm Co.*, 766 A.2d at 450.  A claim accrues in a contract claim at the time a contract is breached, "even if the [party bringing a claim] is ignorant of the cause of action."  *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 732 (Del. 2020).

Here, Sensoria's Counterclaims accrued in 2016 at the latest, when Sensoria alleges Reply "frustrated and impeded" its relationship with HighCape in violation of the PSPA between the May 2016 start of those negotiations and HighCape's withdrawal in December 2016. (Counterclaims ¶¶22, 27, 29).  Sensoria alleges that Reply and Sensoria entered into the PSPA on or about July 14, 2014.  (Counterclaims ¶11).  Sensoria further alleges that Reply's allegedly actionable conduct occurred when Reply's board representative "failed to fulfill any of his duties" under the PSPA (Counterclaims ¶ 18), and that Reply impeded Sensoria's opportunity to enter into an investment agreement with HighCape between May and December 2016.  (*See* Counterclaims ¶¶22–29).  Additionally, Sensoria alleges Reply's involvement in the Mediaset negotiations were "beginning around the same time" as the HighCape negotiations.  (Counterclaims ¶31).

Here, although Sensoria's claims accrued in 2016, Sensoria did not file its Counterclaims until October 13, 2020, meaning the claims must have accrued after October 13, 2017 to satisfy the statute of limitations.  Perhaps in an attempt to save its Counterclaims, Sensoria includes allegations for conduct that occurred after October 13, 2017 in its Counterclaims.  However, with respect to calculating the limitations period, such conduct is irrelevant under Delaware law, which is clear that a cause of action accrues "at the time of the wrongful act," and not when damages are certain or ascertainable or even the time of loss.  *ISN Software Corp.*, 226 A.3d at 732–36 (*citing Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004)); *see also Shea v. Delcollo and Werb, P.A.*, 2009 WL 2476603, at *2 (Del. Aug. 13, 2009) ("The statute of limitations begins to run upon the commission of the act or omission giving rise to the cause of action."). Sensoria's allegations as to both claims began well before October 2017, and potentially as early as 2014, as alleged on the face of Sensoria's Counterclaims.

Nor can Sensoria argue that its Counterclaims relate back to the original Complaint, because they seek affirmative relief independent of the original Complaint.  *See PNC Bank, Del. v. Turner*, 659 A.2d 222, 225 (Del. Super. Ct. 1995); *Wilson v. Kirlin*, 2011 WL 1465576, at *2 (Del. Super. Ct. Apr. 15, 2011) ("While other states may allow late-filed counterclaims under certain circumstances, Delaware jurisprudence has consistently held that affirmative counterclaims, whether compulsory or not, are subject to the statute of limitations.")  Crucially, Sensoria seeks injunctive relief.  (Counterclaims p.30: "That the Court permanently enjoin Reply, S.p.A. from participating in negotiations with potential third-party investors in Sensoria"). Delaware courts have found that counterclaims requesting equitable relief asserted against a contract claim for money damages are not "exclusively defensive" but rather a "distinct action for

6

affirmative relief" to which the statute of limitations applies.  *See, e.g. Coit Capital SEC., LLC v. Turbine Asset Holdings, LLC*, 2019 WL 3949800, at *10–11 (Del. Super. Ct. Aug. 21, 2019).

Thus, Sensoria's Counterclaims are barred by the statute of limitations, and the Counterclaims should be dismissed with prejudice.

## III.    SENSORIA FAILS TO STATE A COUNTERCLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS OPPORTUNITY.

Even if Sensoria's Counterclaims were not time-barred – which they are, Counterclaim I for tortious interference with prospective business opportunity should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because it is riddled with conclusory allegations and fails to allege two necessary elements of the claim.  The crux of Counterclaim I consists of Sensoria's improper attempt to transfer blame to Reply for the failure of some of its business deals by relying on wholly speculative and conclusory allegations in contravention of the requisite pleading standard.

To sufficiently state a claim for tortious interference with prospective business opportunity under Delaware law, a claimant must assert "(1) the reasonable probability of a business opportunity; (2) the intentional interference by defendant with that opportunity; (3) proximate causation; and (4) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner."  *U.S. Bank Nat. Ass'n v. Gunn*, 23 F. Supp. 3d 426, 436 (D. Del. 2014) (*citing DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981). Counterclaim I for tortious interference fails because it does not satisfy the requisite elements of: (1) intentional interference; and (2) proximate cause, and therefore, must be dismissed.

**A.      Sensoria Fails To Sufficiently Allege That Reply Intentionally Interfered With Sensoria's Business Opportunities.**

Sensoria's Counterclaim for tortious interference is deficient, because Sensoria has failed to adequately allege that Reply intentionally interfered with Sensoria's business opportunities – nor can it.

To constitute intentional interference, Sensoria must prove that Reply's "interference with a business opportunity was intentional and wrongful or improper." *U.S. Bank Nat'l Ass'n v. Gunn*, 23 F. Supp. 3d 426, 436 (D. Del. 2014).  Moreover, "[w]hen considering whether [Reply's] actions were improper, the Court must assess these actions in light of [Reply's] privilege to compete or protect [its] business interests in a fair and lawful manner." *Id.* (internal quotation and citation omitted).  "To properly allege an intentional act, [Sensoria] must allege facts demonstrating, or that at least raise a reasonable inference, that [Reply] 'knew an injury [was] certain or substantially certain to occur as a result of [its] action.'" *Konstantino v. AngioScore, Inc.*, 2015 WL 5770582, at *14 (Del. Ch. Oct. 29, 2015) (*citing Beard Research, Inc. v. Kates*, 8 A.3d 573, 604 (Del. Ch. 2010)).

Here, Sensoria failed to allege that Reply knew Sensoria would be damaged as a result of any of its alleged actions or inactions or that Reply's conduct was wrongful or improper.  At the outset, Sensoria alleges that Reply tortiously interfered with Sensoria's prospective business opportunity with HighCape, a potential investor.  (Counterclaims ¶26-28).  To the contrary, Reply's alleged conduct with respect to HighCape was not wrongful or intentionally harmful, and instead, simply reflected Reply fairly and lawfully protecting its business interests, particularly as the majority Series A stockholder of Sensoria.  *U.S. Bank Nat. Ass'n*, 23 F. Supp. 3d at 436; *see Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *8 (Del. Ch. Jan. 20, 2009) (finding that absent specific allegations, such as misrepresentations of fact, general allegations made against a

8

party pursing its legitimate business interests "fail to plead wrongful conduct and therefore do not constitute acts of … tortious interference.").

Sensoria also bases Counterclaim I on the allegation that Reply's Designee did not take part in negotiations with HighCape. (Counterclaims ¶24). However, this conduct does not rise to the level of being intentionally damaging, wrongful or improper. Further, Sensoria only presents vague allegations that Reply refused "to negotiate terms in good faith and in a reasonable amount of time." (Counterclaims ¶27). However, this conduct is likewise not intentionally damaging, wrongful or improper. Notably, Sensoria does not allege that Reply was ever misleading or untruthful in any of its negotiations with Sensoria's prospective investors – nor can it. *See, e.g., Agilent Techs., Inc*, 2009 WL 119865, at *6 (finding that a direct business competitor making "misleading statements regarding the effect of [] litigation on the availability of [another competitor's products] to a potential customer and a potential distributor" constitute intentional interference). Rather, in a strained attempt to sustain a claim, Sensoria labels Reply's inclusion of deal terms for its own benefit as constituting "tortious interference" since those terms *may* have impeded HighCape's acceptance of the deal. (Counterclaims ¶27). The glaring flaw in this argument is that if such negotiations by Reply for its own benefit constituted tortious interference, it would be difficult for any business dealings to proceed without leading to similar claims and subsequent legal action. *See Triton Const. Co. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *17 (Del. Ch. May 18, 2009), *aff'd*, 988 A.2d 938 (Del. 2010). ("[T]he tort of interference with prospective business relationship must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner.") (quotation and citation omitted).

Sensoria also attempts to support its claim by alleging that Reply's Designee opting to not take part in negotiations with HighCape somehow constitutes tortious interference. (Counterclaims

¶24).[1]   However, in doing so, Sensoria ignores that Reply appointed other representatives to negotiate on its behalf. Notably, Sensoria fails to allege that the Designee's absence from the negotiations intentionally thwarted this business opportunity.  (*See* Counterclaims ¶¶23, 24). Sensoria sought HighCape's investment and was apparently willing to accept HighCape's deal terms in order to secure that investment.  However, Sensoria improperly alleges, in a conclusory fashion, that Reply's negotiation of those deal terms, Sensoria's disagreement with those terms, and HighCape's decision to withdraw from those negotiations somehow constitute acts by Reply that were wrongful or in any way intended to harm Sensoria.  *See Agilent Techs., Inc.*, 2009 WL 119865, at *6.  Such unsupported, conclusory allegations are insufficient to sustain this claim.

Similar conclusory allegations are presented by Sensoria with respect to Mediaset, another potential investor.  As with HighCape, Reply's alleged conduct does not rise to the level of tortious interference.  *See Agilent Techs., Inc.*, 2009 WL 119865, at *6.  With Mediaset, Sensoria again asserts vague allegations that Mediaset's investment terms were reasonable and that Mediaset would never have accepted the terms proposed by Reply.  (Counterclaims ¶32).  In contrast to Sensoria's allegations, Reply again fairly and lawfully protected its business interests, as the majority Series A stockholder of Sensoria, by requesting that its representatives, in this instance its CFO and one of its Partners, negotiate the deal.  (Counterclaims ¶33);  *U.S. Bank Nat. Ass'n*, 23 F. Supp. 3d at 436. Also similar to HighCape, Reply's Designee did not participate in negotiations with Mediaset, but Sensoria failed to assert how the Designee's absence constitutes any sort of tortious interference.  (Counterclaims ¶33).

---

[1] Sensoria's arguments hinge on the assumption that Reply's Designee's acts are all imputed to Reply, and that no other Reply actions matter for purposes of Sensoria's claim. However, Sensoria does not allege facts that substantiate this assumption.

Comparable circumstances are also presented with respect to the potential investment in Sensoria led by Equiter. (Counterclaims ¶47). Reply's CFO and Designee were notified of Equiter's potential investment in Sensoria, but opted to not pursue funding for Sensoria that would require corporate restructuring. (Counterclaims ¶47). Again, Reply fairly and lawfully protected its business interests with respect to this potential investment, rather than acting in a wrongful or intentionally harmful manner. *U.S. Bank Nat. Ass'n*, 23 F. Supp. 3d at 436. Sensoria also alleges that during its negotiations with Equiter, Sensoria became aware that Reply's public balance sheet "valued its investment in Sensoria at no value whatsoever." (Counterclaims ¶51). Sensoria only makes vague and tenuous claims that Reply's valuation of Sensoria was an intentional act implemented so that Sensoria would have "difficulty even commencing negotiations with potential investors," which does not rise to the level of tortious interference. (Counterclaims ¶55); *see Agilent Techs., Inc.*, 2009 WL 119865, at *6–7 (merely telling potential business partners that an enterprise "had patent [and intellectual property] issues" is insufficiently wrongful to satisfy pleading standards, particularly in light of a party's legitimate right to compete). Moreover, Reply was required to publicly disclose Sensoria's value under the requisite European legislation.[2] As a result of the foregoing, Sensoria failed to assert a viable counterclaim for tortious interference of prospective business opportunity, and Counterclaim I should be dismissed with prejudice.

---

[2] According to Italian Legislative Decree No. 38 of 2005, all publicly-traded companies like Reply shall prepare their financial statements (including consolidated statements) in compliance with international accounting principles recognized in the European Community pursuant to European Regulation No. 1606/2002 enacted by the European Parliament and by the European Council on July 19, 2002.

According to paragraph 1 of section 154 of the Italian Legislative Decree No. 58 of 1998, within four months of the financial year, all publicly-traded companies shall make the annual financial report available to the public at their registered offices and on their websites, including financial statements and management reports.

**B.     Sensoria Also Fails To Sufficiently Claim That Reply's Alleged Interference Proximately Caused Sensoria's Alleged Damages.**

Counterclaim I is also deficient, because Sensoria has not – and cannot – sufficiently allege that Reply's conduct proximately caused Sensoria's alleged damages.

"In Delaware, proximate cause is that direct cause without which the [incident] would not have happened." *Beard Research, Inc. v. Kates*, 8 A.3d 573, 609 (Del. Ch.), *aff'd sub nom. ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010).  Here, Counterclaim I is devoid of any allegations that directly attribute Reply's participation in negotiations with potential investors, or Reply's Designee's alleged lack thereof, as the direct cause of those potential investors ultimately opting to not invest in Sensoria.  (Counterclaims ¶¶23, 24, 33, 47); *Wayman Fire Prot., Inc. v. Premium Fire & Sec., LLC*, 2014 WL 897223, at *11 (Del. Ch. Mar. 5, 2014), *judgment entered*, (Del. Ch. 2014) (no proximate causation in tortious interference claim where plaintiff failed to secure a contract, and where vendor's reasons for rejecting bid "had [no]thing to do with [defendant's] purported use of improper means.").  In addition, Sensoria fails to sufficiently allege that because Reply requested that certain deal terms be included with respect to agreements with potential investors, those potential investors refused to invest in Sensoria. (Counterclaims ¶¶27, 32); *Wayman Fire Prot., Inc.*, 2014 WL 897223, at *11.

In a weak attempt to support its Counterclaims, Sensoria also alleges that Reply prevented investments in Sensoria so that Reply could acquire Sensoria's intellectual property at a lower price. (Counterclaims ¶58). However, noticeably absent are any allegations that this is the reason that potential investors ultimately decided to not invest in Sensoria.  *Beard Research, Inc.*, 8 A.3d at 609.  Consequently, Sensoria failed to sustain a viable counterclaim for tortious interference of prospective business opportunity, and Counterclaim I should be dismissed with prejudice.

## IV. SENSORIA FAILS TO STATE A COUNTERCLAIM FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

Even if Counterclaim II for breach of implied covenant of good faith and fair dealing was not time-barred, dismissal would be proper because it is based on conclusory allegations that are insufficient to sustain the claim.

Under Delaware law, "the implied covenant attaches to every contract." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005). However, "the implied covenant does not apply when the contract addresses the conduct at issue, but only when the contract is truly silent concerning the matter at hand." *Oxbow Carbon & Minerals Holding v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 507 (Del. 2019) (internal quotations omitted). Furthermore, "the covenant is a *limited and extraordinary* legal remedy." *Id.* (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010) (emphasis added). The elements of a breach of implied covenant claim are the same as a breach of contract claim: "a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Fitzgerald v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998). "The implied covenant of good faith and fair dealing is the doctrine by which Delaware law cautiously supplies terms to fill gaps in the express provisions of a specific agreement." *Allen v. El Paso Pipeline GP Co.*, 113 A.3d 167, 183 (Del. Ch. 2014). Courts are not permitted to implement the implied covenant in order to "rewrite a contract" which one party "now believes to have been a bad deal." *Nemec*, 991 A.2d at 1126. "Parties have a right to enter into good and bad contracts, the law enforces both." *Id.*

"The implied covenant cannot be invoked to override the express terms of the contract. Moreover, rather than constituting a free floating duty imposed on a contracting party, the implied covenant can only be used conservatively to ensure the parties' reasonable expectations are fulfilled." *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 888 (Del. Ch. 2009). The implied

13

covenant of good faith and fair dealing "thus operates only in that narrow band of cases where the contract as a whole speaks sufficiently to suggest an obligation and point to a result, but does not speak directly enough to provide an explicit answer." *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146 (Del. Ch. 2009).

Notably, Delaware courts have found that the implied covenant of good faith and fair dealing does not impose a "requirement that a party act in some morally commendable sense," which is precisely what Sensoria has attempted to impose here. *Allen*, 113 A.3d at 183. "Instead, 'good faith' in the implied covenant context entails 'faithfulness to the scope, purpose, and terms of the parties' contract.'" *Miller v. HCP & Co.*, 2018 WL 656378, at *9 (Del. Ch. Feb. 1, 2018), *aff'd sub nom. Miller v. HCP Trumpet Investments, LLC*, 194 A.3d 908 (Del. 2018), *reargument denied* (Oct. 9, 2018); *quoting Gerber v. Enter. Prods. Holdings, LLC*, 67 A.3d 400, 419 (Del. 2013), *overruled on other grounds by Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808 (Del. 2013). "Similarly, 'fair dealing' here does not imply equitable behavior," and instead "means actions consonant 'with the terms of the parties' agreement and its purpose.'" *Id.*

Counterclaim II for breach of the covenant of good faith and fair dealing is wholly insufficient, and therefore must be dismissed.  Sensoria bases its claim on the allegation that "Reply had an implied obligation under the PSPA and [its attachments and exhibits] to refrain from engaging in arbitrary or unreasonable conduct that had the effect of preventing Sensoria from receiving the benefit of its bargain under the agreements." (Counterclaims ¶68).  However, these allegations amount to nothing but a general obligation for the contracting parties to act reasonably and do not in any way point to specific gaps in the operative contracts to be filled by the Court as is required in order to sustain the claim. *See Allen*, 113 A.3d at 183.  Sensoria has failed to allege *how* Reply breached the parties' reasonable expectations at the time their agreements were

14

executed, which improperly places the onus on the Court to rewrite those agreements to placate Sensoria's regrets. *Nemec*, 991 A.2d at 1126.

Sensoria also contends that Reply was contractually obligated to appoint a Designee who was required to approve loans of over $500,000. (Counterclaims ¶17). Sensoria alleges that Reply breached the covenant of good faith and fair dealing because its Designee did not attend board meetings. (Counterclaims ¶69). Perhaps confusing contractual obligations and covenants with vague references to corporate duties, Sensoria fails to articulate any breach of a term—either express or implied—that Reply's Designee allegedly breached by any of the above-alleged conduct. *See Aspen Advisors LLC v. United Artists Theatre Co.*, 843 A.2d 697, 707 (Del. Ch. 2004), *aff'd,* 861 A.2d 1251 (Del. 2004) (cautioning against granting parties "contractual protections that they failed to secure for themselves at the bargaining table"). Similarly, Sensoria failed to allege how Reply's Designee breached an implied covenant by opting not to participate in calls or meetings. (Counterclaims ¶69); *see Allen*, 113 A.3d at 183 (courts should only imply a contract term that "the parties would have agreed to during their original negotiations if they had thought to address [it]"). Even starker, Sensoria alleges that Reply did not bring Sensoria customers, while failing to assert that any such obligation is imposed by an implied covenant. (Counterclaims ¶19). Notably, Sensoria makes no attempt to argue that the parties would have agreed to contract terms requiring robust meeting participation or a specified number of new customers had the parties considered such terms during original contract negotiations.

Sensoria then claims, in a conclusory fashion, that by Reply's Designee not participating in negotiations, and by Reply's allegedly "arbitrary and unreasonable conduct," Reply somehow breached its implied contractual obligations. (Counterclaims ¶68). Counterclaim II consists of Sensoria's conclusions that Reply allegedly acted unreasonably by not participating in board

meetings, blocking third-party investments, and publicly disclosing its valuation of Sensoria. (Counterclaims ¶69). Such conclusory allegations are not sufficient to sustain a claim for this extraordinary remedy. *Compare Allen*, 113 A.3d at 184 ("[A] reviewing court does not simply introduce its own notions of what would be fair or reasonable under the circumstances.").

Further, by alleging that Reply forced Sensoria to utilize Reply's subsidiaries and affiliates, Sensoria ignores that it contracted to such terms when securing loans from Reply. (Counterclaims ¶69). Similarly, Counterclaim II is devoid of any specific allegations regarding Reply's "obligations to Sensoria and its shareholders," and is devoid of allegations that explain "the overarching purpose of the PSPA and [its attachments and exhibits]" that was allegedly frustrated by Reply. (Counterclaims ¶69).

For Sensoria's interactions with potential investors, it is a significant stretch for Sensoria to assert that Reply's Designee was impliedly obligated to participate in negotiations with third parties. (Counterclaims ¶¶24, 33, 69). It would similarly be a significant stretch for Sensoria's claim that by adding terms to its benefit, Reply thereby breached an implied covenant of good faith and fair dealing. (Counterclaims ¶27). Sensoria has not sufficiently plead that such an act rises to the level of constituting a breach of any implied covenant. (Counterclaims ¶32). To imply such obligations on behalf of Reply, in a conclusory fashion, is improper and a step too far. Thus, Sensoria failed to plead a viable counterclaim for breach of implied covenant of good faith and fair dealing, and Counterclaim II must be dismissed with prejudice.

## **CONCLUSION**

For the above reasons, all counterclaims against Plaintiff Reply, S.p.A. should be dismissed with prejudice for failure to state a claim for which relief can be granted under Rule 12(b)(6).

Dated:  November 17, 2020                 **CHIPMAN BROWN CICERO & COLE, LLP**

OF COUNSEL:                                */s/ Paul D. Brown*
                                          Paul D. Brown (No. 3903)
Maria Z. Vathis (admitted *pro hac vice*)  Hercules Plaza
BRYAN CAVE LEIGHTON                        1313 North Market Street, Suite 5400
  PAISNER LLP                              Wilmington, Delaware  19801
161 North Clark Street, Suite 4300         302-295-0191
Chicago, IL  60601                         brown@chipmanbrown.com
(312) 602-5000
maria.vathis@bclplaw.com                   *Attorneys for Plaintiff Reply S.P.A.*

17