# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REPLY S.P.A., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | C.A. No. 19-1524-MN |
| | ) | |
| v. | ) | **PUBLIC VERSION** |
| | ) | |
| SENSORIA, INC. | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

## SENSORIA, INC.'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS PURSUANT TO RULE 12(B)(6)

OF COUNSEL:

Patrick L. Vail
PATRICK L. VAIL, PLLC
1000 Second Avenue, Suite 1770
Seattle, WA 98104
(206) 624-5824
pvail@pvaillaw.com

Peter J. Walsh, Jr. (#2437)
Matthew F. Davis (#4696)
Alan R. Silverstein (#5066)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
pwalsh@potteranderson.com
mdavis@potteranderson.com
asilverstein@potteranderson.com

Dated: December 8, 2020
Public version dated: December 16, 2020
6954368

*Attorneys for Defendant/Counterclaim Plaintiff*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...............................................................................................................1

STATEMENT OF FACTS ..................................................................................................2

ARGUMENT ......................................................................................................................9

    I.     LEGAL STANDARD...........................................................................................9

    II.    SENSORIA'S COUNTERCLAIMS ARE NOT TIME BARRED BY THE STATUTE OF LIMITATIONS ............................................................................10

    III.   SENSORIA'S COUNTERCLAIM PLED ALL ELEMENTS OF A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS OPPORTUNITY ..................................................................................................14

        A.    Sensoria Properly Alleges That Reply Intentionally Interfered With The HighCape, Mediaset and Equiter Investments....................................14

        B.    Sensoria Properly Alleges That Reply's Actions Proximately Caused Its Injuries ..............................................................................................17

    IV.   SENSORIA ADEQUATELY PLEADS A COUNTERCLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING....................19

CONCLUSION..................................................................................................................20

# TABLE OF AUTHORITIES

CASES

Page(s)

*Agilent Techs., Inc. v.* Kirkland,
   2009 WL 119865 (Del. Ch. Jan. 20, 2009) ................................................................16, 18, 19

*Airborne Health, Inc. v. Squid Soap, LP*,
   984 A.2d 126 (Del. Ch. 2009)..................................................................................................20

*Amirsaleh v. Bd. of Trade of City of New York, Inc.*,
   2008 WL 4182998 (Del. Ch. Sept. 11, 2008) .........................................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................................10

*Assured Partners of Va., LLC. v. Sheehan*,
   2020 WL 2789706 (Del. Super. May 29, 2020) ......................................................................12

*Beard Research, Inc. v. Kates*,
   8 A.3d 573 (Del. Ch. 2010). ..............................................................................................18, 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007)............................................................................ *passim*

*BTIG, LLC v. Planatir Techs., Inc.*,
   2020 WL 95660 (Del. Super. Jan. 3, 2020) .............................................................................12

*Chamison v. HealthTrust--Hosp. Co.*,
   735 A.2d 912 (Del. Ch. 1999), aff'd, 748 A.2d 407 (Del. 2000) ............................................20

*Dunlap v. State Farm Fire & Cas. Co.*,
   878 A.2d 434 (Del. 2005) ........................................................................................................19

*Erickson v. Pardus*,
   551 U.S. 89, 127 S. Ct. 2197 (2007).........................................................................................9

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997).....................................................................................................10

*ISN Software Corp. v. Richards, Layton & Finger, P.A.*,
   226 A.3d 727 (Del. 2020) ...................................................................................................11, 12

*NAMA Holdings, LLC v. Related WMC LLC*,
   2014 WL 6436647 (Del. Ch. Nov. 17, 2014) ..........................................................................19

*Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co. of New York*,
    484 F. Supp. 1375 (D. Del. 1980) ..............................................................13

*Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*,
    202 A.3d 482 (Del. 2019) .........................................................................19

*Scott Fetzer Co. v. Douglas Components Corp.*,
    1994 WL 148282 (Del. Ch. Apr. 12, 1994) ...............................................13

*Shea v. Delcollo and Werb, P.A.*,
    977 A.2d 899 (Table), 2009 WL 2476603 (Del. Aug. 13, 2009) ..............12

*TL of Fla., Inc. v. Terex Corp.*,
    54 F. Supp. 3d 320 (D. Del. 2014) ...........................................................14

*U.S. National Bank Association v. Gunn*,
    23 F. Supp. 3d 426 (D. Del. 2014) ...........................................................16

*Wayman Fire Protection, Inc. v. Premium Fire and Security LLC*,
    2014 WL 897223 (Del. Ch. Mar. 5, 2014). ..............................................18

## RULES

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 9

Counterclaim Plaintiff Sensoria, Inc. ("Sensoria"), by and through its undersigned counsel, hereby opposes Counterclaim Defendant Reply S.p.A's ("Reply") Motion to Dismiss Defendant's Counterclaims Pursuant to Rule 12(b)(6) (D.I. 76, 77 (the "Motion")) or, in the alternative, requests leave to file amended counterclaims.[1]

## **INTRODUCTION**

This case arises from the business relationship between Reply S.p.A. ("Reply") and Sensoria, Inc.  Reply, as the majority investor in Sensoria had the sole right to approve certain types of investments in Sensoria.  Despite promises to help Sensoria grow and knowing that Sensoria needed investment capital to continue its business, Reply blocked every investment opportunity presented to Sensoria in an effort to devalue the company so that Reply could acquire it and its valuable intellectual property.  Frustrated and operating a stalled business as a result of Reply's actions, Sensoria brought Counterclaims for tortious interference with prospective business opportunity and breach of the implied covenant of good faith and fair dealing.

Reply's motion to dismiss should be denied for the following reasons:

- Reply's statute of limitations defense ignores whole sections of the Counterclaims alleging Reply's blocking of potential investment well after the critical date identified by Reply.  Further, Sensoria had no reason to know Reply was intentionally blocking outside investment.  Accordingly, Sensoria's claims are not time barred.

---

[1] Pending decision on Sensoria's motion to dismiss which was decided on September 22, 2020 (D.I. 77) and the filing of Sensoria's Counterclaims and the pending motion to dismiss, neither party has served any written discovery or discovery requests other than initial disclosures.  The parties have agreed to extend discovery accordingly and intend to present a revised schedule shortly.  The parties have also stipulated to extend the time to amend the parties' pleadings to February 26, 2020.  D.I. 79.  Accordingly, if the Court is inclined to grant Reply's motion, Sensoria respectfully requests that it be permitted to amend its Counterclaims.

- Sensoria adequately pled its claim for tortious interference with prospective business opportunity by alleging that Reply knew of Sensoria's financial condition and need for investment yet intentionally blocked any investment so that Reply could acquire Sensoria and its intellectual property.  With regard to proximate cause, it was Reply and Reply alone that failed to approve an investment despite high interest from multiple investors.

- Sensoria also adequately pled its claim for breach of the covenant of good faith and fair dealing because Reply, having the ultimate discretion to approve investments, failed to exercise its discretion reasonably and in good faith by refusing to respond to or approve potential investments that were necessary for Sensoria to continue operations.

## STATEMENT OF FACTS

### *Reply Invests In Sensoria*

Sensoria is a Delaware corporation in the business of body-sensing wearable devices. Davide Vigano ("Vigano") and Maurizio Macagno ("Macagno") are founders of, and the CEO and CTO, respectively, of Sensoria.  Sensoria designs, develops and sells smart garments and wearable products that communicate data regarding the wearer's activity, health and fitness.  D.I. 70 ("Counterclaims") ¶ 5.

In 2014, Reply approached Sensoria about making an investment in Sensoria.  Mario Rizzante, Reply's President and Founder, and Tatiana Rizzante, Reply's CEO, reached out to Vigano and asked to invest.  *Id*. ¶ 8.  Reply also promised Sensoria that it would bring customers and business partners to Sensoria.  *Id*.  Reply is the largest system integration company in Italy

so, naturally, Sensoria was excited to have Reply as an investor and partner. *Id.* ¶ 10. Driving Reply's interest, Reply valued Sensoria's intellectual property at approximately $20 million. *Id.*

On or about July 14, 2014, Reply purchased 6,843,100 Series A Shares of Sensoria pursuant to the Sensoria, Inc. Series A Preferred Stock Purchase Agreement (the "PSPA"). Attached as exhibits to the PSPA (and attached to Reply's Complaint (D.I. 1) in this action) are, *inter alia*, an Amended and Restated Certificate of Incorporation of Sensoria, Inc. and an Investor Rights Agreement ("IRA"). As a result of the purchase, Sensoria became and has remained the majority Series A stockholder of Sensoria, Inc. Counterclaims ¶ 13.

Article IV, Section C(2)(c) of the Amended and Restated Certificate of Incorporation of Sensoria, Inc., attached as Exhibit B to the PSPA, states that the holders of Common Stock and Preferred Stock "shall be entitled to vote on the election of the members of the Board" and that if any "director serving on the board is designated as the 'Preferred Director' pursuant to the [Voting Agreement]…then such director shall be deemed to be the 'Series Designee' for purposes hereof." *Id.* ¶ 14. Thus, by controlling the majority of Series A stock, Reply was able, in its sole discretion, to elect the Series A Designee.

Pursuant to Article IV, Section C(2)(b)(i) of the Amended and Restated Certificate of Incorporation of Sensoria, Inc., a majority of the outstanding shares of Series Preferred has to approve "any authorization, issuance or any designation, whether by reclassification or otherwise, of any new or existing class or series of stock or any other securities convertible into, or exercisable for, equity securities of the Company having rights, preferences or privileges senior to or on parity with the Series Preferred." *Id.* ¶ 15. Accordingly, Reply had to approve any authorization or issuance of new stock that would have rights similar to Reply's Series A Preferred Stock.

Pursuant to Section 3.7(b) of the IRA, the Series A Designee to the Sensoria Board of Directors is required to approve the "incurrence [of] any indebtedness in excess of $500,000.00 that is not already included in a Board-approved budget with the approval of the Series A Designee, other than trade credit incurred in the ordinary courts of business." *Id.* at ¶ 16.

Combined, these provisions of the various agreements governing the relationship between Sensoria and Reply essentially gave Reply the ability to abuse its position as majority stockholder to block any additional significant investment in Sensoria.

### *Reply Blocks Investment by HighCape Capital*

In May of 2016, representatives of HighCape Capital ("HighCape") and Sensoria met in Boston, Massachusetts to discuss an investment in Sensoria. *Id.* at ¶ 22.  HighCape, a growth equity fund that invests in commercial-stage healthcare and life sciences companies, had followed Sensoria for two years and was interested in investing at least ███████. *Id.* at ¶¶ 22, 23.  Reply insisted that Richard Hadden, a Reply Partner, Emanuele Angelidis ("Angelidis"), CEO of Breed Reply (Reply's wholly owned subsidiary investment entity in the United Kingdom) and others, negotiate the terms of the investment. *Id.* at ¶ 23.  Marco Cusinato ("Cusinato"), Reply's Series A Designee to the Board of Directors did not participate in the negotiations despite Sensoria's request.

On July 6, 2016, HighCape formally sent an investment term sheet to Sensoria with the purpose of negotiating a deal to provide the needed capital for Sensoria to enter the healthcare space. *Id.* at ¶ 25.  Despite the work that had been done to that point, and HighCape's clear intent to invest in Sensoria, Reply failed to make progress on the deal by, on multiple occasions, failing to communicate internally or to follow up with Sensoria and HighCape. *Id.* at ¶ 26.

4

Sensoria, desperate for the capital to be provided by HighCape, which would also attract additional investors, urged Reply to authorize the deal.  *Id.*

When it did respond, Reply frustrated and impeded both Sensoria's leadership and HighCape by refusing to negotiate terms in good faith and in a reasonable amount of time.  Over Sensoria's protests, Reply added terms to the deal that would have only benefitted Reply and made the deal harder for HighCape to accept.  *Id.* at ¶ 27.

Frustrated with the lack of progress, in October 2016, Dean Tozer, one of HighCape's partners, stated



*Id.* at ¶ 28.

But that final version never came and in December 2016, HighCape withdrew from negotiations.  *Id.* at ¶ 29.

***Reply Blocks Investment by Mediaset S.p.A.***

Between 2016 and 2018, Reply engaged in negotiations for a potential ▮▮▮▮▮ investment by Mediaset S.p.A. ("Mediaset").  Again, just as it did in the HighCape negotiations, Reply insisted that Reply's own officers negotiate the deal.  This time, Angelidis was joined by Daniele Angelucci ("Angelucci"), Reply's CFO, to negotiate with Mediaset.  And, once again, Cusinato ignored the negotiations and refused to participate.  *Id.* at ¶ 33.

Mediaset provided several term sheets, each providing reasonable terms for investment that Reply either refused to approve, ignored or insisted on other terms that would never be accepted by Mediaset.  *Id.* at ¶ 32.  Nevertheless, in 2018, attempting to salvage the deal, Sensoria provided a new strategy and Mediaset provided a new term sheet in an effort to restart

negotiations but Reply again failed to act or approve the investment.  *Id.* at ¶ 34.  When negotiations terminated in 2018 due to Reply's failure to approve a deal, the investment being considered was in the range of ████████████████.  *Id.* at ¶ 36.

### *Reply Blocks Investment by Equiter S.p.A.*

In 2018, Sensoria applied to an Italian Government R&D investment vehicle lead by Equiter S.p.A. ("Equiter"), an Italian investor associated with the Italian government.  Sensoria immediately notified Reply of the potential investment.  *Id.* at ¶ 47.  Reply, responded that it was not interested in pursuing funding for Sensoria that would require corporate restructuring even though Sensoria assured Reply that Reply would not have to make any additional investment to participate in the restructuring.  *Id.*

Sensoria, nevertheless, tried to put together a deal that would work.  On August 23, 2018, a Sensoria board meeting was called where directors Vigano and Macagno reported to Reply's Series A Designee that Equiter had reviewed the proposed technical and business plan and it was scored very high by Equiter's due diligence teams.  *Id.* at ¶ 48.  Equiter proposed investing ████████ to create a European entity or restructuring Sensoria into a new company in Italy.  *Id.*

Hoping to convince Reply that this deal was in everyone's best interest, on September 24, 2018 Vigano and Macagno flew to Turin, Italy to meet with Equiter, first, then Reply in person. Despite Sensoria's efforts, Rizzante and Angelucci refused to even talk to Equiter about the new proposed investment. *Id.* at ¶ 49.

Sensoria continued to try to move the investment forward but was again held back by Reply's actions.  On or about October 17, 2018, Sensoria learned from Equiter that Reply's public balance sheet stated that Reply valued its investment in Sensoria at no value whatsoever. Sensoria asked for an explanation from Reply, but none was provided.  Equiter even asked to

discuss the same with Reply but Reply refused thus forcing Equiter to withdraw from the negotiations.  *Id.* at ¶51.

Nevertheless, on February 13, 2019, Equiter, still interested in investing, contacted Sensoria to inform it that a meeting between Equiter and Reply would take place in Turin. Curiously, Reply never informed Sensoria of the meeting nor did Reply tell Sensoria of the outcome of the meeting.  *Id.* at ¶ 52.  For reasons still unknown to Sensoria and in spite of multiple requests, Equiter's proposed ████████████ investment—████████████— was also rejected by Reply, just as Reply had blocked the investments from HighCape and Mediaset.  *Id.* at ¶53.

### *Sensoria's Financial Condition*

Reply's initial investment in Sensoria was not enough for Sensoria to bring its products to market and become self-sufficient.  Indeed, in March of 2016, with Sensoria's financial condition worsening, Sensoria asked for and Reply agreed to a loan for €230,000 so that Sensoria could pay for research and development salaries and other operating expenses.  In October of 2016, Reply made another loan to Sensoria for $1,075,000 for the same purpose.  *Id.* at ¶ 37.  In conjunction with those loans, Reply instructed Sensoria to spend ██████████████ in advisory services fees to Breed Reply and has also spent an additional ████████ on services provided by Air Reply (also a fully owned subsidiary of Reply).  Such efforts resulted in no investments.  *Id.* at ¶ 38.

These efforts were made in recognition by both Reply and Sensoria that additional investment was needed.  *Id.* at ¶ 39.  Such need was expected.  As known to Reply, the 2016 loans were not sufficient to operate the business in the long term.  Over the course of the relationship, Sensoria provided to Reply comparative data of total fundraising to date for

Sensoria versus other startups in the same industry.  Such data showed capital raised at a rate of two and three times more than Sensoria, indicating the need to raise new capital to sustain the nascent business and compete on a field level with the other companies.  But, not a single investor was secured by Breed Reply or Reply's subsidiaries for Sensoria.  *Id.*

By early 2017, Sensoria's financial condition had become dire.  *Id.* at ¶ 37.  During an in-person business update meeting in Milan, Italy in April 2017, Sensoria's management team presented to Rizzante a plan that required additional investments to get to profitability.  *Id.*  At that meeting Rizzante made Sensoria's directors believe that Reply was more than willing to invest in Sensoria through a Series B stock offering.  Reply even conducted due diligence in support of further investment, including conducting due diligence on Sensoria's customers.  *Id.* Despite Sensoria's need for capital immediately, Reply took months to complete due diligence on a company Reply had been invested in and held a board seat for nearly three years.  In the meantime, Sensoria ran into the very cash flow problems it had told Reply about at the beginning of the year.  To make matters even worse, at the end of the process Reply informed Sensoria that, although the pipeline looked promising, Reply had decided not to invest.  *Id.*

On June 29, 2017, Reply summoned Vigano and Macagno again from Seattle, Washington to travel urgently to Turin, purportedly to discuss a new Reply investment, management and business plan for Sensoria.  *Id.* at ¶ 42.  Vigano and Macagno met with Rizzante, Angelucci, Reply's CFO, and Angelidis, Breed Reply's CEO.  Instead of a meeting designed to help Sensoria move forward, Reply ambushed Sensoria, claiming the 2016 loans were due and that Sensoria was failing.  *Id.*  Reply proposed a complete asset purchase of Sensoria, including all of its technology, intellectual property, employees and other assets for just

██████████   *Id.*  Although Vigano and Macagno returned to the United States and began to consider the offer, a few weeks later Reply rescinded the offer.  *Id.* at ¶ 43.

When Reply refused to invest, Vigano and Macagno proposed different alternative options including acquiring a license in exchange for cash from their own personal savings to inject into the company to be able to pay salaries.  *Id.* at ¶ 44.  Vigano and Macagno even offered to resign if the proposal was not acceptable.  Sensoria discussed these options via email and during multiple phone conversations with Rizzante, Angelucci, and Cusinato.  None of the options were approved.

To keep the business going, Vigano and Macagno continued to use their personal savings to provide capital to Sensoria to pay salaries and other expenses.  They restructured the business to reduce costs.  Vigano and Macagno have taken no compensation from Sensoria since July 2017 through the present.  *Id.* at ¶ 46.  Despite being hopeful that either the Mediaset or Equiter investments, with negotiations continuing into 2018 and 2019, respectively, would come through, Reply rejected both and Sensoria continues to operate with meager financial resources.

## ARGUMENT

### I.   LEGAL STANDARD

In considering a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in a complaint as true and consider them in the light most favorable to plaintiff.  *Erickson v. Pardus,* 551 U.S. 89, 127 S. Ct. 2197 (2007).  A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955 (2007).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence." *Bell Atl. Corp.*, 550 U.S. 544 at 545, 127 S. Ct. at 1959.

Here, the allegations of Sensoria's Counterclaims far exceed the pleading requirements and Reply's motion to dismiss should be denied.

## II. SENSORIA'S COUNTERCLAIMS ARE NOT TIME BARRED BY THE STATUTE OF LIMITATIONS

Sensoria's Counterclaims are clearly not time barred because most of the facts alleged occurred within the three-year statute of limitations. Curiously, Reply's opening brief ignores Sensoria's Counterclaims' plainly alleged years-long history of blocked investments and instead focuses on just a few dates mentioned therein. Further, because Reply hid from Sensoria that its objective was to block any further investment in Sensoria and thus cause Sensoria to fail financially, and because Sensoria could not have suspected Reply's true intent until Reply had blocked both the Mediaset and Equiter investments, the statute of limitations should be tolled.

Reply incorrectly argues that "Sensoria's Counterclaims accrued in 2016 at the latest, when Sensoria alleges Reply "frustrated and impeded its relationship with HighCape." Motion at 5. Reply also argues that "Reply's involvement in the Mediaset negotiations were "beginning around the same time as the HighCape negotiations" in an attempt to set the relevant time of injury in 2016. *Id.* Both arguments miss the point. First, Sensoria's Counterclaims are clearly premised on the actions Reply has taken over the course of the parties' relationship from 2016 to

as recently as 2019.  Counterclaims ¶¶ 61-62 (tortious interference);  ¶ 67-69 (breach of implied covenant).  Reply, however, appears to almost exclusively focus its argument on the HighCape negotiations.  Although those negotiations concluded in 2016, it was but one negotiation of several that Reply blocked.  While Sensoria might have been able to withstand the HighCape negotiation failing, particularly with the Mediaset negotiation pending at the same time and continuing on until 2018, Sensoria could not withstand, nor could it predict, having every significant investment opportunity blocked by Reply.  And that is exactly what Reply did.

Second, and plainly obvious from the allegations of the Counterclaims, the Mediaset negotiations were ongoing until 2018.  Counterclaims ¶¶ 32 ("From 2016 to 2018), 34 ("after two years of interest from Mediaset, in 2018), 36 ("The investment, which by 2018 was estimated to be in the range of ███████████████).  Reply simply ignores these plainly obvious allegations.

Third, Reply does not even mention the Equiter investment in its statute of limitations argument.  The negotiations over the Equiter investment, which Reply also blocked, took place beginning in 2018 and continued into 2019 (*Id.* ¶¶ 47, 52).  Thus, all events related to the Equiter investment occurred within the statute of limitations period defined by Reply.  *See* Motion at 6 ("the claims must have accrued after October 13, 2017 to satisfy the statute of limitations").

Reply attempts to avoid facts occurring after October 13, 2017 by arguing that "a cause of action accrues at the time of the wrongful act."  Motion at 6.  But the cases Reply replies on are completely distinct from the facts here.  In *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, defendants were accused of giving incorrect advice on a merger agreement which later resulted in financial losses for plaintiff.  226 A.3d 727, 729-731 (Del. 2020).  There, the Court found the injury to occur on the date that defendant told plaintiff it had given incorrect advice on

the merger agreement, approximately one week after the transaction relying on the incorrect advice closed. *Id*. at 735 n.36. The Court did, however, toll the statute of limitations for that intervening week between when the injury occurred (the transaction closing date) and when plaintiff became aware of the error. *Id.*

Similarly, in *Shea v. Delcollo and Werb, P.A.*, also cited by Reply, defendant failed to remove plaintiff's ex-husband form a deed to their shared property despite defendant's request that plaintiff do so and the ex-husband's request for the same. 977 A.2d 899 (Table), 2009 WL 2476603, at *1-2 (Del. Aug. 13, 2009). Despite the finding that the injury occurred nearly four years before the complaint was filed and that the claim was subject to a three-year statute of limitations, the court held that the time of discovery rule applied and tolled the statute of limitations because plaintiff was blamelessly ignorant of her inherently unknowable claim until she discovered. *Id.* at *3.

Under Delaware's discovery rule, the statute of limitations is tolled in the event of "concealment or fraud," or when the injury to the plaintiff is "inherently unknowable and the [plaintiff] is blamelessly ignorant of the wrongful act and the injury complained of." *Coleman v. PricewaterhouseCoopers, LLC*, 854 A.2d 838, 842 (Del. 2004) (footnote omitted). The statute of limitations is tolled for tortious interference and breach of the covenant of good faith and fair dealing claims where the doctrines of inherently unknowable injury and fraudulent concealment apply. *BTIG, LLC v. Planatir Techs., Inc.*, 2020 WL 95660, at *5 (Del. Super. Jan. 3, 2020) (denying motion to dismiss where plaintiff alleged it only discovered defendant's decision to block any transaction by plaintiff within the statute of limitations period); *Assured Partners of Va., LLC. v. Sheehan*, 2020 WL 2789706, at *19 (Del. Super. May 29, 2020).

Accordingly, regardless of when Reply began to intentionally block investment in Sensoria, Sensoria's allegations establish entitlement to tolling under the time of discovery doctrine. At the time the HighCape deal fell apart, the time at which Reply alleges the statute of limitations period began, Sensoria and Reply were in active negotiations with Mediaset for a ███ ███ investment in Sensoria. Although Sensoria at that time may have understood that Reply and HighCape were unable to work together, Sensoria had no reason to believe that Reply intentionally blocked the deal with HighCape and that Reply would continue to do so with the nefarious motive of taking Sensoria for itself. Indeed, it was not until much later, after Reply blocked the Mediaset and Equiter investments, that Sensoria realized that Reply's intent was to block any further investment from interested parties in an attempt to secure Sensoria's valuable IP for itself. Counterclaims at ¶¶ 57-59.[2]

Further, Reply actively hid its intent to force Sensoria into financial failure by continuing to impose itself on investment negotiations and blocking the same under the guise of assisting Sensoria and by leading Sensoria to believe that it would continue to support Sensoria by itself investing and encouraging the investment of third parties. Sensoria believes that discovery will uncover evidence of Reply's true intentions to conceal its objectives from Sensoria and it should have the opportunity to take discovery to prove the same. *See TL of Fla., Inc. v. Terex Corp.*, 54

---

[2] Alternatively, because Sensoria's claims constitute claims for a continuing tort and a continuing breach of contract, where damages cannot fully be calculated until the actions cease, the statute of limitations does not begin to run. *Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co. of New York*, 484 F. Supp. 1375, 1390 (D. Del. 1980) ("In the case of a continuing tort, Delaware courts have held that where there is a continuing injury whose damages cannot be determined until the cessation of the wrong, the statute of limitations begins to run no earlier than the last date of that wrong."); *Scott Fetzer Co. v. Douglas Components Corp.*, 1994 WL 148282, at *5 (Del. Ch. Apr. 12, 1994) ("Where there is a continuing contract and a continuing breach, the applicable statute of limitations begins to run only when full damages can be ascertained and recovered."). The statute of limitations should be tolled because Sensoria's injury is due to Reply's intentional blocking of any investment over more than three years into 2019, not just a discrete injury during the HighCape negotiations as Reply suggests.

F. Supp. 3d 320, 329 (D. Del. 2014) ("Frequently, determining whether the statute of limitations has been tolled pursuant to the "discovery rule" or due to fraudulent concealment requires a factual inquiry not amenable to resolution on a motion to dismiss.").

Finally, even if the Court finds that Counterclaims related to the HighCape investment have expired, the same Counterclaims are timely pled as to the Mediaset and Equiter investments, both investments valued in the millions of dollars. Such claims should not be separately dismissed pursuant to the statute of limitations. Reply has made no such argument.

### III.   SENSORIA'S COUNTERCLAIM PLED ALL ELEMENTS OF A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS OPPORTUNITY

Reply complains that Sensoria's Counterclaim for tortious interference with prospective business opportunity does not adequately plead the elements of intent and proximate cause. But instead of pointing to supposed deficiencies in Sensoria's pleading, Reply simply argues that its version of the facts—that Reply was protecting its own business interests, is correct. But that is not the standard at the motion to dismiss stage. Under well-settled law, "a judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." *Bell Atl. Corp.*, 550 U.S. at 572, 127 S. Ct. at 1975.

#### A.   Sensoria Properly Alleges That Reply Intentionally Interfered With The HighCape, Mediaset and Equiter Investments

As Reply recognizes in its brief, to properly allege an intentional act, Sensoria must allege facts demonstrating "or that at least raise a reasonable inference," that Reply knew an injury was certain or was substantially certain to occur as a result of Reply's actions. Motion at 8. Sensoria's allegations easily meet this burden.

The Counterclaim clearly alleges, and Reply does not dispute, that in 2016 Sensoria was already in desperate need of capital and Reply knew this. Counterclaims at ¶¶ 37-39. The

Counterclaim further makes clear that Reply was well-aware that Sensoria believed it needed additional capital to be competitive within the market. *Id*. at ¶ 39. Then, in 2017, Sensoria again informed Reply that it was having cash flow issues. *Id.* at ¶ 41. Sensoria even told Reply that its founders would have to inject cash from their own personal savings to pay salaries. *Id.* at ¶ 44. Sensoria even told Reply it would be unable to pay back money it borrowed from Reply in 2016 if Reply did not cooperate with the Equiter investment. *Id.* at ¶ 48. Clearly, Reply knew that if additional investment did not come, Sensoria would suffer damages.

Further, Reply had to know that its actions would preclude any investment from taking place. Reply and its board designee, pursuant to the Amended and Restated Certificate of Incorporation and the IRA, had the exclusive right to approve virtually any significant investment in Sensoria. *See id.* at ¶¶ 14-17. With that power in hand, Reply simply refused to agree to any investment and made clear to potential investors that it was not interested in investment by delaying negotiations and suggesting unreasonable terms.

Finally, Sensoria plausibly alleges that Reply blocked investments by HighCape, Mediaset and Equiter so that Reply could acquire Sensoria and its valuable intellectual property. *Id*. at ¶¶ 57-59. To be clear, there is no dispute that Reply never approved an investment from HighCape, Mediaset and Equiter. That Reply disagrees with Sensoria's allegations as to Reply's intent is not relevant to resolving this motion.

In response to Sensoria's allegations, Reply argues that it was protecting its business interests. Motion at 8, 10 and 11. First, that is merely a dispute over the facts. At the pleadings stage, the Court should accept the allegation that Reply was acting to injure Sensoria so that it could take Sensoria's intellectual property for itself. Second, the cases relied upon by Reply are not helpful to its motion. Rather, the cases support denying Reply's motion to dismiss.

Reply primarily relies on *U.S. National Bank Association v. Gunn*, 23 F. Supp. 3d 426 (D. Del. 2014) to support its position that Sensoria has not adequately pled that Reply's actions were intentional and wrongful.  But that opinion denies a *motion for summary judgment* by plaintiff finding that there are disputed issues of material fact precluding summary judgment.  *Id*. at 437 ("Nonetheless, based upon the record before it, the Court has insufficient evidence to conclude that Gunn's litigious efforts to claim ownership to the property were made in bad faith given his adamant, albeit unsuccessful, assertions that the property belongs to him.  Because there remain disputes of fact, the Court will deny summary judgment as to Count IV.").  In addition to applying a wholly different standard than applicable here, the case gives no guidance as to the minimum showing necessary for a claim to overcome a motion to dismiss.

But such guidance is found within the very cases cited by Reply.  First, generally, the bar to survive a motion to dismiss is low.  *Bell Atl. Corp.*, 550 U.S. at 556, 127 S. Ct. at 1965 ("And, of course, a well-pled complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (quotation marks omitted).  More specific to the issue raised by Reply, in *Agilent Techs., Inc. v. Kirkland* when discussing plaintiff's claim for tortious interference with prospective business relations, the court denied defendants' motion to dismiss stating: "AMT's pleading barely passes muster, a reality that suggests that AMT may have difficulty ultimately prevailing on its Counterclaim. But that assessment does not alter AMT's legal right to proceed to discovery on a well-pled complaint." 2009 WL 119865, at *10 (Del. Ch. Jan. 20, 2009).  Accordingly, even if there is some dispute over whether Reply acted to protect its interests versus wrongly interfering with investments in Sensoria, Reply's motion should be denied, and this case should proceed to discovery.

**B. Sensoria Properly Alleges That Reply's Actions Proximately Caused Its Injuries**

Reply simply ignores the allegations of Sensoria's Counterclaim by arguing that Reply was not the proximate cause of Sensoria's failure to receive investments from HighCape, Mediaset and Equiter.  For example:

- "Reply's failure to move the deal forward continued, despite Sensoria's pleas for Reply to let the deal proceed on the terms HighCape had agreed to in August." Counterclaims ¶ 27

- "Indeed, after two years of interest from Mediaset, in 2018, after the presentation of a new strategy by Sensoria, Mediaset provided a new term sheet to restart the negotiations but yet again, Reply failed to act or to approve the investment for Sensoria."  *Id.* ¶ 34.

- "For reasons unknown to Sensoria and in spite of multiple requests, Equiter's proposed ███████████ investment—████████████████—was also blocked by Reply, just as Reply had blocked the investments from HighCape and Mediaset. No alternative option was proposed by Reply despite Reply knowing of Sensoria's dire financial condition."  *Id.* ¶ 53.

Reply's mere dispute that the three potential investors in Sensoria failed to invest because of Reply's actions ignores that Reply was the party negotiating these deals, at its own insistence, and in each circumstance the potential investor presented term sheets and proposals which Reply refused to approve despite Sensoria's approval, urging, and financial condition.  Counterclaims ¶¶ 25, 32, 48.  To be clear, Sensoria is not just alleging that "potential investors ultimately *decided* to not invest in Sensoria" (Motion at 12 (emphasis added)), Sensoria alleges that Reply failed to approve and otherwise blocked investment by such investors, despite negotiations

between the parties lasting for *years* and although Reply failed to act, the investors continued to seek to invest in Sensoria.  At the very least, Sensoria has adequately pled that Reply caused these potential investments to fail.  To the extent Reply argues that it was just protecting its business interests, that is a dispute to be settled after discovery.

Indeed, in both of the cases cited by Reply in support of its argument on this point, the court was considering liability post trial.  In *Beard Research, Inc. v. Kates*, the court, *after trial*, found defendants *liable* for tortious interference with prospective business relations.  8 A.3d 573, 607-613 (Del. Ch. 2010).  Similarly, in *Wayman Fire Protection, Inc. v. Premium Fire and Security LLC*, the court was deciding the tortious interference claim after trial and post-trial briefing.  2014 WL 897223, at *9 n.81 (Del. Ch. Mar. 5, 2014).  Although the court in *Wayman* found no proximate cause, it did so based on facts presented at trial that plaintiff performed poorly and failed to submit a bid that conformed to the requirements of the business target.  *Id*. at *11.  Accordingly, the court held that plaintiff's failure to secure the contract was completely within plaintiff's control and therefore any improper actions undertaken by defendant were not the cause of plaintiff failing to secure the contract.  *Id.*  Here, not only did Sensoria's potential investors provide term sheets confirming their readiness to invest in Sensoria, they worked tirelessly with Sensoria and, unfortunately, Reply, to reach agreement while Reply, and not Sensoria, refused to approve any investment.  In stark contrast to the facts of *Wayman*, Reply is the only cause of record. To the extent Reply disputes the same, the Court should decide such issues of fact at least after discovery, if not trial, as the courts did in *Beard Research* and *Wayman.  See also Agilent Techs., Inc.*, 2009 WL 119865 at *10; *Bell Atl. Corp.*, 550 U.S. at 556, 127 S. Ct. at 1965.

18

## IV.   SENSORIA ADEQUATELY PLEADS A COUNTERCLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

Reply was required to act in good faith and with due diligence in fulfilling its contractual obligations.  The implied covenant of good faith and fair dealing attaches to every contract under Delaware law.  The implied covenant requires a contracting party "to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain."  *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (quotation marks omitted).  It is especially appropriate where the parties may have had "understandings or expectations that were so fundamental that they did not need to negotiate about those expectations."  *NAMA Holdings, LLC v. Related WMC LLC*, 2014 WL 6436647, at *16 (Del. Ch. Nov. 17, 2014).  Particularly relevant here, the implied covenant of good faith and fair dealing applies "when a party to the contract is given discretion to act as to a certain subject and it is argued that the discretion has been used in a way that is impliedly proscribed by the contract's express terms."  *Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 504 n.93 (Del. 2019).

Fundamental to the expectations of both parties to this relationship was the obligation that Reply would assist Sensoria and, at the very least, not prevent Sensoria from ever receiving a significant third-party investment.  Here, Reply was trusted with the sole discretion to approve investments which would indebt Sensoria in amounts greater than $500,000 or create new or modify existing classes of stock.  Practically speaking, other than an investor simply handing over money to Sensoria, this covered the range of potential further investment in Sensoria.  Sensoria expected, even though it was not explicitly stated in the parties' written agreements, that Reply would not block every major investment opportunity so that it could acquire Sensoria and its valuable intellectual property for itself.

19

Rather, it was required that Reply would exercise its discretion reasonably.  *Amirsaleh v. Bd. of Trade of City of New York, Inc.*, 2008 WL 4182998, at *8 (Del. Ch. Sept. 11, 2008) ("Simply put, the implied covenant requires that the "discretion-exercising party" make that decision in good faith.") (denying *summary judgment* where factual issues remained as to whether defendants acted in good faith); *Chamison v. HealthTrust--Hosp. Co.*, 735 A.2d 912, 920 (Del. Ch. 1999), aff'd, 748 A.2d 407 (Del. 2000) ("This implied covenant is a judicial convention designed to protect the spirit of an agreement when, without violating an express term of the agreement, one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain.") (finding breach of implied covenant where complete discretion to select counsel was exercised to select counsel deemed inadequate by client for refusal to advocate selected defenses); *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146–47 (Del. Ch. 2009) ("When a contract confers discretion on one party, the implied covenant requires that the discretion be used reasonably and in good faith.").

In view of the cases cited above, the complete control Reply exerted over the investment negotiations and Reply's refusal to approve any plan for investment, there exists a well-pled claim for breach of the covenant of good faith and fair dealing.  Sensoria adequately pleads that Reply breached the covenant of good faith and fair dealing when it blocked investments so that it could force Sensoria into financial distress for Reply's own benefit.  Reply's motion to dismiss should be denied.

## **CONCLUSION**

For the forgoing reasons, the Court should deny Reply's Motion to Dismiss or, in the alternative, grant Sensoria leave to file amended counterclaims.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:                           By: */s/ Alan R. Silverstein*

Patrick L. Vail                            Peter J. Walsh, Jr. (#2437)
PATRICK L. VAIL, PLLC                      Matthew F. Davis (#4696)
1000 Second Avenue, Suite 1770             Alan R. Silverstein (#5066)
Seattle, WA 98104                          Hercules Plaza
(206) 624-5824                             P.O. Box 951
pvail@pvaillaw.com                         Wilmington, DE 19899-0951
                                           (302) 984-6000
                                           pwalsh@potteranderson.com
                                           mdavis@potteranderson.com
                                           asilverstein@potteranderson.com

Dated: December 8, 2020                *Attorneys for Defendant/Counterclaim Plaintiff*
Public version dated: December 16, 2020
 6954368